UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO.: 1:19-cr-10273-RGS

UNITED STATES OF AMERICA,

v.

JOSE MARTINEZ

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR BOOKER VARIANCE

### I. Introduction

To fashion a sentence, the Court is first required to calculate the appropriate guideline range under the United States Sentencing Guidelines ("USSG"). United States v. Smith, 531 F.3d 109 (1ˢᵗ Cir. 2008). After the Court determines the appropriate guideline range, it is required to consider the sentencing factors set forth in 18 USC § 3553(a). The guidelines are not presumptively applicable, Nelson v. United States, 555 U.S. 350 (2009), nor are they mandatory or even presumptively reasonable. Id. The guidelines are merely advisory in nature and the Court must consider all the Section 3533 (a) factors in imposing a sentence. United States v. Booker, 533 U.S. 220 (2005), Gall v. United States, 552 U.S. 38 (2007).

### II. Guideline Range

In paragraph 33 of the Presentence Investigation Report, the probation officer applies a four (4) level enhancement, pursuant to USSG §2K2.1(b)(6), resulting in an adjusted offense level of 26, and a total offense level of 23, taking into account a three (3) level decrease for the defendant's acceptance of responsibility. The defense

maintains that application of the four (4) level enhancement is not supported by the facts, and the defendant's total offense level should be 19, after the decrease for acceptance of responsibility.

In United States v. Paneto, 661 F.3d 709 (1st Cir. 2011) the Court had occasion to review the application of Section 2K2.1(b)(6) in the context of a drug trafficking case. The Court held that the government has the burden of proving the application of the enhancement by a preponderance of the evidence. Paneto, supra at 715. The Court acknowledged that the enhancement applies to situations where a defendant possesses a firearm "…with reason to believe that it would be used or possessed in connection with another felony offense." Section 2K2.1(b)(6). The Court interpreted this to mean that the enhancement applies when the firearm is located in close proximity to the drugs or drug paraphernalia. Paneto, supra at 717, Section 2K2.1(b)(6), Note 14(B). In Paneto the Court upheld the application of the enhancement because the firearm was found in the apartment where the drugs were located. Paneto, supra at 717.

In the present case, the weapons involved were not found in the apartment where the defendant was arrested. The weapons were located in the basement of the residential structure, hidden beneath insulation. The defense maintains that the government, therefore, is unable to establish, as it must, that the firearms were found in close proximity to the drugs discovered in the apartment, and the enhancement should not be applied.

III. **Booker Variance**

Because the guidelines are merely advisory and non-mandatory and not to be applied presumptively, a sentencing court may impose a non-guideline sentence. Booker, supra; United States v. Martinez, 520 F.3d 87 (1st Cir. 2008). Pursuant to Section 3553(a), the court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes of statute, and the court must consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 USC Section 3553(a)

The defendant has been detained at the Wyatt Detention Facility since his arrest on June 28, 2019.  He has remained incarcerated throughout the entire COVID-19 Pandemic and has suffered all of the difficulties generally experienced by correctional facilities, such as rampant infection and frequent quarantines and lockdowns.

Medical records from the Wyatt indicate that the defendant contracted COVID-19 at least once.  The defendant maintains that he has been infected twice during his lengthy pre-trial detention.  Medical records also establish that the defendant has a history of

3

asthma, which puts him at a greater risk for serious illness or death from COVID-19. The defendant reports, and a family member confirms, that he has a significant mental health history, including at least one lengthy mental health hospitalization.

Even before COVID, Courts recognized that unusually harsh conditions of confinement can justify a lower sentence. In United States v. Sutton, No. 07-426 (KSH), 2007 WL 3170128 (D.N.J. Oct. 25, 2007), the Court held that it "must factor in the full sentence the overly punitive nature of such an experience" and varied downward because of the overcrowded, unacceptable conditions at the pretrial facility. See also United States v. Pacheco-Soto, 386 F. Supp. 2d 1198 (D.N.M. 2005) (granting departure because defendant's deportable status results in conditions of confinement that are "severe and unfair"); United States v. Noriega, 40 F.Supp.2d 1378, 1380 (S.D.Fla. 1999) (departing downward where there "is little question that [segregated confinement] is a more difficult…type of confinement than in general population. For some, the consequences of such deprivation can be serious."); McClary v. Kelly, 4 F. Supp. 2d. 195, 207 (W.D.N.Y. 1998) ("[T]hat prolonged isolation from social and environmental stimulation increases the risk of developing mental illness does not strike this Court as rocket science. Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally…").

In the past year, the general conditions of confinement for detainees have been much more punitive than they were in non-pandemic times. In United States v. Rodriguez, 492 F. Supp. 3d 306 (S.D.N.Y. 2020), the Court considered a compassionate release request. It recognized that:

The pandemic, aside from posing a threat to Rodriguez's health, has made Rodriguez's incarceration harsher and more punitive than would otherwise have been the case. This is because the federal prisons, as "prime candidates" for the spread of the virus, (cites omitted) have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal. For someone with Rodriguez's health profile, the risk of suffering severe health consequences if he contracts COVID-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure Rodriguez's safety, means that "the actual severity of [Rodriguez's] sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing." (cites omitted)

In United States v. Ng Lap Seng, 15-CR-706, 2021 WL 961749, (S.D.N.Y. Mar 15, 2021), the Court found that the harsh conditions of confinement during the pandemic were an appropriate factor in ordering compassionate release.

Generally speaking, the conditions that the defendant has endured because of the pandemic has made his pretrial incarceration more punitive and harsher than it would have been in non-COVID-19 times. The defendant, in particular, has suffered enormously. Not only has he contracted the virus, but he is an individual at greater risk of harm from the virus due to his documented asthma condition. This respiratory condition, coupled with his mental health difficulties, has made the conditions of his pre-trial detention uniquely onerous from a psychological/emotional perspective.

Dated: February 17, 2022                     RESPECTFULLY SUBMITTED
                                             FOR THE DEFENDANT
                                             BY HIS ATTORNEY

                                             /s/Scott F. Gleason
                                             Scott F. Gleason, Esquire
                                             GLEASON LAW OFFICES, P.C.
                                             163 Merrimack Street
                                             Haverhill, MA  01830
                                             (978) 521-4044
                                             B.B.O. Reg. No. 195000

CERTIFICATE OF SERVICE

I, Scott F. Gleason, Esquire, do hereby certify that I have this date delivered a copy of the within document to all interested parties by way of electronic filing.

Dated: February 17, 2022

/s/Scott F. Gleason
Scott F. Gleason, Esquire