UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

vs.

JOSE MARTINEZ,

         Defendant.

Criminal No. 1:19-cr-10273-RGS

**GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits this Reply to Defendant's Sentencing Memorandum in connection with the sentencing of defendant Jose Martinez (hereinafter, the "defendant"). The Pre-Sentence Report (hereinafter, "PSR"), prepared by the United States Probation Office (hereinafter, "Probation"), applied a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) for possession of a firearm or ammunition in connection with another felony offense. Although the defendant did not submit any objections to the PSR, in his sentencing memorandum (Dkt. 103) (hereinafter, "Defendant's Sentencing Memorandum"), the defendant argues that the Court should not apply the four-level enhancement. As is set forth in detail herein, Probation properly applied the four-level enhancement, and the Court should adopt that finding.

**BACKGROUND**

In the spring of 2019, the Drug Enforcement Administration (hereinafter, "DEA") began an investigation into a drug trafficking organization (hereinafter, "DTO") in the Lawrence, Massachusetts area. *See* PSR, at ¶ 8. Between April and June 2019, an undercover agent

1

(hereinafter, the "UC") made four controlled purchases of fentanyl from the DTO.[1]  *See id.*  The details of those four controlled purchases are set forth in paragraphs 10-19 of the PSR and are not restated here.  *See id.*, at ¶¶ 9-19.  In summary, for each controlled purchase, the UC made arrangements for the deal by contacting the DTO phone, and the UC ultimately met with an individual in Lawrence to complete the deals.  *See id.*, at ¶¶ 8-19.  For each of the controlled purchases, the UC met with co-defendant Ronyel Pena (hereinafter, "Pena"), who provided the UC with fentanyl ranging from approximately 20 grams to 80 grams per deal.  *See id.*  Each of the controlled purchases took place near the defendant's residence, 22 Chardon Street, Lawrence, Massachusetts (hereinafter, "22 Chardon").  *See id.*  For the last two controlled purchases, agents observed Pena at 22 Chardon.  *See id.*, at ¶¶ 16 and 18.  With respect to the controlled purchase on June 17, 2019, agents observed Pena travel to meet with the UC and supply the UC with 29 grams of fentanyl.  Immediately following the deal, agents observed Pena go directly to 22 Chardon.  *See id.*, at ¶ 16.  With respect to the last controlled purchase on June 27, 2019, agents observed Pena enter 22 Chardon, remain inside for several minutes, then walk directly to meet with the UC to deliver 81.5 grams of fentanyl.  *See id.*, at ¶¶ 18-19.

On June 27, 2019, after placing Pena under arrest, agents went to 22 Chardon and observed multiple security cameras.  *See id.*, at ¶ 20.  After knocking and hearing movement inside, agents forced entry out of concern for potential destruction of evidence.  *See id.*  As agents entered the residence, the defendant attempted to flee out of a window, but was detained by agents at the perimeter of the property.  *See id.*  After obtaining a federal search warrant, agents searched 22 Chardon and found multiple items indicative of drug trafficking, as well as two loaded firearms,

---

[1] The first transaction between the UC and the DTO was on April 29, 2019, when the UC met with an unidentified male who provided a sample of fentanyl to the UC (approximately 2.087 grams).

ammunition, gun oil, a gun attachment, and a bulletproof vest. *See id.*, at ¶¶ 20-25.

In the bathroom, agents found hundreds of empty green pill capsules and a smashed cell phone in the sink. *See id.*, at ¶ 22; *see also* Exhibit 1 to the Government's Sentencing Memorandum (photograph of empty pill capsules); Exhibit 2 to the Government's Sentencing Memorandum (photograph of smashed cell phone). Agents also observed that the toilet water was green, similar in color to the pill capsules. *See id.*; *see also* Exhibit 3 to the Government's Sentencing Memorandum (photograph of toilet).

In the kitchen, agents found a monitor showing the security camera footage, a tray used to fill pill capsules, multiple smashed cell phones, a digital scale, a large amount of cash, lactose and baking soda which are commonly used to dilute drugs for sale, multiple plastic bags commonly used to package drugs for sale, and several wet bags containing a white chunky substance. *See id.,* at ¶ 23; *see also* Exhibit 4 to the Government's Sentencing Memorandum (photographs from kitchen). The DEA Northeast Laboratory subsequently confirmed that the white substance in the bags found in the kitchen contained fentanyl. *See id.,* at ¶ 23.

In the basement, which was easily accessible from the defendant's first floor apartment, agents found a loaded Kel Tec rifle caliber pistol and a loaded Glock 26 handgun.[2] *See id.*, at ¶ 24; *see also* Exhibit 5 to the Government's Sentencing Memorandum (photograph of guns). The Kel Tec is a semi-automatic firearm that is capable of accepting a large capacity magazine. *See id.*, at ¶ 24. Also, in the basement agents found the hard drive to the security camera system for the defendant's apartment, as well as a wallet containing a health services card in the name of the defendant. *See* 21-MJ-5251-JDG, Affidavit of DEA Special Agent James Keczkemethy in Support of Criminal Complaint (hereinafter, "Complaint Affidavit"), at 9. After being advised of

---

[2] These two guns and related ammunition are charged in Count Six of the Superseding Indictment.

his rights, the defendant told agents, "You didn't find my wallet with the guns. It was in a suitcase." *See* Complaint Affidavit, at 10. Agents had indeed found the wallet inside of a suitcase, which was within 10 feet of where they found the guns. *Id.*

In the defendant's bedroom, which he identified as his, agents found three additional bullets of the same caliber ammunition as that found in the Kel Tec,[3] as well as a gun attachment, gun oil, and a bulletproof vest. *See id.,* at ¶ 25; *see also* Exhibit 6 to the Government's Sentencing Memorandum (photographs of bullets and bulletproof vest). Also in the defendant's bedroom, agents found a debit card in the defendant's name, a small bag containing a small amount of cocaine, a box of plastic sandwich bags commonly used to package drugs for sale, a money counter, a large amount of U.S. currency in the pocket of a pair of pants, and two cellular telephones. *See* Complaint Affidavit, at 8-9.

On February 12, 2020, a federal grand jury returned a superseding indictment charging defendant with one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 6 – loaded Kel Tec and loaded Glock), one count of felon in possession of ammunition, in violation of 18 U.S.C. §922(g)(1) (Count 7 – three bullets found in the bedroom), and one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 8). On August 21, 2021, the defendant pled guilty to all three counts, pursuant to a plea agreement. *See* Dkt. No. 90.

## ARGUMENT

The Court should apply the four-level enhancement pursuant to U.S.S.G. § 2K.1(b)(6)(B) both because the ammunition located in the bedroom was found in close proximity to the drugs and drug trafficking paraphernalia, and because the loaded firearms found in the basement and the

---

[3] The three bullets found in the defendant's bedroom are charged in Count Seven of the Superseding Indictment.

ammunition found in the bedroom each separately and in concert had the potential to facilitate drug trafficking.

The United States Sentencing Guidelines provide for a four-level increase "if the defendant… used or possessed any firearm **_or_** ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). Application Note 14A to §2K2.1(b)(6)(B) states that the enhancement applies "if the firearm **_or_** ammunition facilitated, **_or had the potential of facilitating_**, another felony offense." U.S.S.G. § 2K2.1(b)(6)(B), cmt. n. 14(A) (emphasis added). In *United States v. Paneto*, the First Circuit held that the phrase "in connection with" is to be read broadly and "that application of the enhancement does not require either actual use" of the firearm or ammunition during commission of the felony "or physical proximity" between the firearm or ammunition and the felony offense in question. 661 F.3d 709, 716 (1st Cir. 2011).[4]

### Possession of Ammunition Alone Is Sufficient to Apply the Enhancement

The defendant's argument as to why the enhancement should not apply focuses solely on the location of the *firearms* in the basement, however, he completely ignores the *ammunition* found in his bedroom, which *was* in close proximity to drugs and drug trafficking paraphernalia. By the explicit language and a plain reading of the guideline provision, ammunition alone can support the application of the enhancement under § 2K2.1(b)(6)(B) if that ammunition had the potential to facilitate the felony offense. The First Circuit has not yet addressed this issue, however, the Fifth, Sixth, and Eleventh Circuits have all held that ammunition alone, without the presence of a firearm, can be sufficient to apply the enhancement under § 2K2.1(b)(6)(B). *See United States v. Eaden*,

---

[4] Defendant's Sentencing Memorandum misstates the holding in *Paneto*, arguing that in order for the enhancement to apply, the government "must" establish that "the firearms were found in close proximity to the drugs discovered in the apartment." As set forth herein in more detail, though close proximity is *one* way the government can establish—and has established—that the enhancement should apply, it is certainly not the *only* way in which the enhancement applies.

914 F.3d 1004 (5th Cir. 2019); *United States v. Coleman*, 527 F.3d 205 (6th Cir. 2010); *United States v. Posley*, 706 Fed.Appx. 313 (6th Cir. 2017); *United States v. Chappell*, 334 Fed.Appx. 970 (11th Cir. 2009).

In *Coleman*, the Sixth Circuit noted:

> Both U.S.S.G. § 2K2.1(b)(6) and Application Note 14(a) refer to firearms and ammunition using the disjunctive "**or**." If U.S.S.G. § 2K2.1 required that a firearm always be present in order for ammunition to facilitate, this section would use "and" between the terms firearm and ammunition or would only require that a firearm be present.

*Coleman*, 627 F.3d at 213 (emphasis in original). The Sixth Circuit thus held, "the Guideline is clear that an enhancement is in order for the presence of a weapon **or** ammunition. The Guideline does not require the presence of a weapon **and** ammunition." *Id.* (emphasis in original). The court in *Coleman* further explained its holding, noting that "having ammunition facilitates or makes easier the use of a firearm in a felony drug transaction," and that the "purpose" of the guideline "is to address a concern about the increased risk of violence." *Id.*

As noted above, here the three bullets found in the bedroom (charged in Count Seven) were in close proximity to drugs, as well as a large amount of drug trafficking paraphernalia, including hundreds of pill capsules, cutting agents, bags often used for distribution of drugs, digital scales trays to fill pills with drugs, large amounts of currency, a money counter, and multiple cellular telephones. *See Posley*, 706 Fed.Appx. at 317 (defendant's possession of ammunition alone, in close proximity to his drug-related items, was sufficient to apply the four-level enhancement). The facts in *Posley* were similar to the facts of this case. In *Posley*, the defendant was arrested while in possession with four bullets, cocaine, $700 cash, and—like the defendant in the instant matter—remnants of his drugs in the toilet of his residence. *Id*. at 314. On appeal, the court rejected the defendant's argument against the sentencing court's four-level enhancement for the possession of

6

the ammunition, saying that "[the sentencing court] correctly determined that the mere presence of ammunition in close proximity to the drugs facilitated, or had the potential to facilitate, that offense." *Id*. at 315.  The court held that "ammunition has the capacity to facilitate a drug-trafficking offense, as required under § 2K2.1(b)(6)(B), whenever it is in close proximity to the drugs involved in the offense." *Id*. at 316 (citing *Coleman*, 627 F.3d at 212).  Thus, the mere existence of ammunition in close proximity to a defendant's drug trafficking operation provided sufficient indicia of facilitation to apply the enhancement under § 2K2.1(b)(6)(B).  *See Posley*, 706 Fed. Appx. at 317.

### Loaded Firearms and Ammunition Had the Potential to Facilitate Drug Trafficking

In addition to the ammunition found in the bedroom being sufficient on it's own to warrant the enhancement, the defendant *also* possessed two loaded firearms in connection with the drug trafficking offense.  The government need only show by a preponderance of evidence that the firearms or ammunition had "the potential to aid or facilitate the commission of another offense." *Paneto*, 661 F.3d at 717.  In making this determination, courts are instructed to look to the totality of the circumstances to determine the connection.  *See United States v. Matthews*, 749 F.3d 99 (1st Cir. 2019) (explaining that it would support the sentencing court's finding by taking "the evidence in its totality (a macro approach, not a piece-by-piece micro one)…"); *see also United States v. Saez*, 796 Fed.Appx. 616, 620 (11th Cir. 2019) ("[A] 'connection' is shown by less evidentiary proof than is required to show possession 'in furtherance' of a drug offense.").  Here, based on a totality of the circumstances, the firearms and the ammunition—each separately as well as in concert with each other—had the potential to facilitate drug trafficking.

In *Saez*, the Eleventh Circuit upheld the district court's application of the four-level enhancement where, upon execution of a search warrant, officers discovered a large quantity of

drugs in the defendant's garage, a firearm in a spare bedroom, and $6,500 cash and a drug ledger in the defendant's own bedroom. *See Saez*, 796 Fed.Appx. at 618. Similar to the defendant here, *Saez* argued that there was no connection between the firearm and the drugs. *Id.* at 620. Disposing of this contention, the court noted that the crucial factor was whether the firearm itself was *accessible* to the defendant. *Id*. (citation omitted). Likewise, the court noted that it had previously affirmed a sentence enhancement for a drug trafficking charge where the firearm was in a vehicle across the street, as the defendant could have nonetheless quickly retrieved the firearm and used it. *Id*. (citing *United States v. Flennory*, 145 F.3d 1264, 1269 (11th Cir. 1998), *superseded on other grounds by United States v. Brown*, 332 F.3d 1341 (11th Cir. 2003)). Accordingly, the court affirmed the sentencing court, saying that "the gun had the potential to facilitate Saez's drug sales or possession, because the gun was sufficiently close to the drug-trafficking activity so that he could have easily retrieved it . . . ." *Id*. (citation omitted).

As was the case in *Saez*, here, the loaded guns were in the basement, where they were readily accessible to the defendant, and he could have quickly retrieved them. The defendant lived in an apartment on the first floor. The door to that apartment was near the door to the basement where the defendant stored his loaded firearms. As described above, the defendant's apartment had all the tools of his drug trafficking trade and large amounts of drug proceeds, as well as multiple items that indicated his desire to protect his drugs and drug proceeds. For example, the defendant maintained a camera security system with six separate cameras stationed on the outside of the residence. Additionally, the items found in the defendant's bedroom are clearly linked to the loaded firearms found in the basement. First, the ammunition found in the defendant's room was of the type that could be used in the Kel Tec firearm found in the basement. Second, agents also found a bullet-proof vest, a gun attachment, and gun oil in the defendant's bedroom. All of

8

these items are related, and when considered as a whole based on the totality of the circumstances, clearly had the potential to facilitate his drug trafficking activities. *See Saez*, 796 Fed.Appx. at 620 ("While Saez contends that the gun was not close enough to the drug-trafficking activity, the district court reasonably concluded that the gun had the potential to facilitate Saez's drug sales or possession, because the gun was sufficiently close to the drug-trafficking activity so that he could have easily retrieved it, if needed, for protection or deterrence from persons seeking to interfere with his drug activities.") (internal citations omitted).

## CONCLUSION

For the reasons set forth herein, the defendant possessed the firearms and ammunition in connection with another felony offense (*i.e.,* possession with intent to distribute controlled substances), and the Court should apply a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

DATED: April 14, 2022

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   */s/ Alathea E. Porter*
Alathea E. Porter
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2022, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Alathea E. Porter*
Alathea E. Porter
Assistant U.S. Attorney