```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3      * * * * * * * * * * * * * *
        UNITED STATES OF AMERICA    *
 4                                   *     CRIMINAL ACTION
                        v.           *     No. 19-10273-RGS-2
 5                                   *
        JOSE MARTINEZ                *
 6                                   *
        * * * * * * * * * * * * * *
 7

 8

 9               BEFORE THE HONORABLE RICHARD G. STEARNS
                      UNITED STATES DISTRICT JUDGE
10                             DISPOSITION
                             April 20, 2022
11

12      APPEARANCES:

13              UNITED STATES ATTORNEY'S OFFICE (By AUSA Alathea E.
           Porter) 1 Courthouse Way, Suite 9200,  Boston,
14         Massachusetts, 02210, on behalf of the United States of
           America
15
                GLEASON LAW OFFICES, P.C., (By Scott F. Gleason,
16         Esq.) 163 Merrimack Street, Haverhill, Massachusetts
           01830, on behalf of the Defendant
17

18

19

20
                                    Courtroom No. 21
21                                  1 Courthouse Way
                                    Boston, Massachusetts 02210
22

23                       James P. Gibbons, RPR, RMR
                           Official Court Reporter
24                      1 Courthouse Way, Suite 7205
                         Boston, Massachusetts  02210
25                       jamesgibbonsrpr@gmail.com
```

```
1                    P R O C E E D I N G S

2              THE CLERK:  All rise.

3          (Whereupon, the Court entered the courtroom.)

4              THE CLERK:  Court is open.  You may be seated.

5          This is Criminal No. 19-10273, United States versus

6      Jose Martinez.

7          Would counsel please identify themselves for the

8      record.

9              MS. PORTER:  Good afternoon, your Honor.  Alathea

10     Porter on behalf of the United States.

11             MR. GLEASON:  Good afternoon, your Honor.  Scott

12     Gleason on behalf of Mr. Jose Martinez, who is seated to my

13     immediate left.

14             THE COURT:  So I see.

15         All right, counsel, in terms of the sentencing file, I,

16     of course, have the presentence report, which I know counsel

17     are reviewed.

18         I have the government's sentencing memorandum.

19         I have the defendant's sentencing memorandum, asking

20     for a Booker variance in the sentence.

21         I have a reply from the government to the sentencing

22     memorandum filed on behalf of the defendant.

23         I know there is a plea agreement in the case.  And as

24     Probation calculates it, with a Criminal History Category of

25     III, the advisory range is, I believe, 57 to 71 months.
```

1          There are no objections filed to the presentence

2    report, although, Mr. Gleason, I think you want to make an

3    argument about the four-level firearms' enhancement, as I

4    understand it.

5          But that is what I have and I have looked at in terms

6    of preparation for the sentencing.

7          So let's begin with the government, as is usually the

8    case.

9               MS. PORTER:  Yes, your Honor.

10         Would you like to be heard on the enhancement first?

11              THE COURT:  It would be easier to do everything in

12   one piece.

13              MS. PORTER:  Okay.  Sure, your Honor.

14         I won't belabor the point, as the government did file a

15   reply brief on this issue which sets forth all of the law on

16   this matter.  But I believe it's clear, your Honor, that

17   Probation properly applied the four-level enhancement in

18   this case.  And essentially there's only one issue really

19   for the Court to determine, and that is whether or not the

20   firearms, the two firearms, the ammunition that was in those

21   firearms in the basement and the separate ammunition found

22   in the defendant's bedroom, whether or not those items were

23   in connection with the drug trafficking offense.

24         The defendant already admitted to possession of all of

25   those items, the ammunition and the firearms, and he also

1    admitted to a felony -- another felony offense, that is,

2    possession with intent to distribute fentanyl.

3        And the First Circuit has been clear that the term "in

4    connection with" should be determined broadly by the court;

5    that it does not require actual use; that it does not

6    require close proximity or physical proximity in this type

7    of case to drugs or drug paraphernalia; that the government

8    must only show by a preponderance of the evidence and based

9    on the totality of the circumstances that the gun or

10   ammunition had the potential to facilitate the drug

11   trafficking offense, not that it actually did, but that it

12   had the potential to.

13       And as the government points in its reply brief, a

14   number of other circuits, the Fifth, Sixth, and Eleventh,

15   have specifically held that ammunition, even on its own, can

16   be sufficient to apply the enhancement.

17       In this case you have both.  But I think the Court can

18   follow the guidance of those circuits and so find here that

19   the ammunition in the bedroom on its own did have the

20   potential to facilitate the drug trafficking offense.

21       And that is because -- for a number of reasons.  One,

22   your Honor, that ammunition was of the same caliber that

23   went in one of the firearms that was found in the basement,

24   and, therefore, that ammunition made it easier to use that

25   firearm and therefore indicates that it could be used and

1    did have the potential to facilitate the drug trafficking.

2         And so, your Honor, I do think the Court can follow

3    those other circuits to find that the ammunition alone here

4    is sufficient to apply to enhancement.

5         But that's not all of the evidence that we have here,

6    your Honor.

7         In fact, we also have two firearms, both of which were

8    loaded, which were in the basement.

9         Now, granted, this is a basement and it is a common

10   basement.  But, your Honor, the door to the basement and the

11   door that was the back door to the defendant's apartment

12   literally were catty-corner to each other.  They shared a

13   framing in order to get there.  He could have easily gone

14   and retrieved those firearm.

15        The other items in the residence indicate a strong

16   desire to protect his drug trafficking activity.

17        He had six different security cameras that were placed

18   throughout the outside perimeter of the apartment.

19        Also in the bedroom where the ammunition was found

20   there was a bulletproof vest.  There was a gun attachment.

21   There was gun oil.  There was a money counter.  There were

22   baggies used to package drugs.  There was a small quantity

23   of cocaine found.  There was a large sum of cash.

24        Those were all in his bedroom.

25        In the bathroom there were green pill capsules that the

1    government maintains were used to create fentanyl pills.

2        The toilet water was green, indicating the defendant

3    had flushed some of those capsules that likely already

4    contained fentanyl.  There was a smashed cell phone in the

5    bathroom.

6        In the kitchen there were additional smashed cell

7    phones found in the trash can.  There were wet bags that

8    contained fentanyl also in the trash can.

9        There was a digital scale.  There was lactose.  There

10   was baking soda.  These are commonly used as cutting agents.

11       There was a pill mechanism for filling the pill

12   capsules with drugs that was found in the oven, I believe.

13       There was a large sum of cash.

14       And there was a huge monitor from which you could watch

15   the footage from the six different surveillance cameras that

16   were set up around the perimeter of the apartment.  And in

17   that basement, along with those firearms, was the hard drive

18   for those security cameras.

19       All of these factors taken together, your Honor,

20   indicate a strong desire to protect the drugs and the drug

21   proceeds.  And when you consider all of those factors

22   together, and how easily accessible and readily retrievable

23   those firearms in the basement were, and also the fact that

24   the items found in the bedroom relate to those items in the

25   basement, the drug paraphernalia, drug proceeds, throughout

1   the entire residence, your Honor, all of those factors, when

2   considered together, certainly by a preponderance of the

3   evidence, establish that the firearms, the ammunition in the

4   firearms, and the ammunition that was found separately in

5   his bedroom, had the potential to facilitate the drug

6   trafficking activity, and Probation properly applied that

7   enhancement, and this Court should do so as well.

8       So with that, your Honor, the government agrees with

9   Probation that the proper guidelines calculation range is as

10  set forth in the PSR, and the government has made a

11  recommendation for a sentence at the high end of the

12  guideline, which here is 71 months.

13      And, your Honor, that is a significant sentence, but it

14  is warranted in this case given all the factors.  Primarily,

15  your Honor, the factor that led the government to

16  recommending a sentence at the high end of the guidelines

17  here is the fact that the drug weight in this case is

18  grossly understated.  And that is because the defendant

19  destroyed the evidence.  He flushed it all down the toilet.

20      And because of that, we don't actually know how much

21  fentanyl the defendant possessed, and that likely has

22  dropped the Guideline sentencing range down lower than it

23  might otherwise be.

24      Your Honor, this a case involving fentanyl.  It's a

25  case involving fentanyl with a defendant who clearly had a

1    sophisticated system to monitor and protect his drug

2    trafficking activities.  And it's also a case involving very

3    serious firearms.

4        The Kel Tec semiautomatic rifle, your Honor, is not one

5    that is used for self-defense.  That is one for terror and

6    intimidation.  There is no reason to have that and a

7    bulletproof vest in one's apartment in Lawrence,

8    Massachusetts, other than to protect your drugs and your

9    drug proceeds.

10        The nature of this offense warrants a very serious and

11    significant sentence.

12        And, your Honor, the defendant's criminal history also

13    warrants a significant sentence and one at the high end of

14    the guidelines.

15        Though his criminal history is not extensive, it is

16    quite concerning.  Within a span of three years, between the

17    ages of 20 and 23, the defendant committed two drug

18    trafficking felony offenses.  The first one he committed

19    when he was 20 in New Hampshire, and then he subsequently

20    committed this offense while he was on probation for that

21    offense.

22        And, your Honor, that shows a proclivity of this

23    defendant to recidivate.  And in doing so, in setting the

24    sentence in this case, specific deterrence is particularly

25    of concern where the defendant has already shown that he is

1    inclined to continue to conduct the same behavior even when

2    he is on probation for the same offense.

3        All of these factors considered together, and in

4    particular the destruction of the evidence, your Honor, a

5    significant sentence is warranted both to send a direct

6    message to this defendant, to adequately punish him for his

7    conduct, to send a specific deterrence effect signal to him

8    and a general deterrent effect to others and to promote

9    respect for the law.

10        Because of the destruction of the evidence, that is the

11    main reason, your Honor, that the government is asking for a

12    high-end guideline sentence in this case.  And under the

13    circumstances here, that is a sentence that is the minimum

14    sufficient but not greater than necessary to achieve the

15    goals of sentencing.

16        Thank you.

17            THE COURT:  Thank you, Ms. Porter.

18        Mr. Gleason.

19            MR. GLEASON:  Thank you, your Honor.

20        Your Honor, if I may work backwards somewhat relative

21    to counsel's argument.

22            Number one, with regard to the recommendation for 71,

23    which seems to be predicated almost entirely upon this

24    suggestion of destruction of evidence and of the amount of

25    the evidence that was destroyed, what I would suggest to the

1    Court, what counsel is attempting to do is actually use

2    totem pole speculation.

3        Even in their own brief they suggest that it appears

4    likely that something was flushed or dumped.  And they don't

5    even know that themselves.  It's likely.  And they've got

6    some suggestion of it.  But this is the same investigation

7    that resulted in Counts One, Two, Three, Four and Five being

8    dismissed against the defendant based upon erroneous

9    information to begin with.

10        Now, in addition to a speculation that's being asked of

11    this Court, and certainly the standard is a reasonable --

12    reasonable inferences can certainly be drawn.  However, what

13    the government is then attempting to do is to say that he

14    likely would be facing a higher drug weight sentencing.

15        We -- not only do they not know what was destroyed or

16    if destroyed, but they don't know if -- even if they were

17    correct, how much.  How can they make a suggestion and have

18    it be called anything other than speculation when they

19    don't -- they don't even -- it might have been 10 grams.

20        Would 10 grams have changed anything?

21        No.

22        Would 30 grams have changed anything?

23        No.

24        The fact of the matter is in this case -- and what

25    they've talked about in their argument relative to a

1    combination of things is the evidence and the paraphernalia

2    that was found throughout the apartment.  And they're right.

3    And based upon that evidence that was found, that's why the

4    defense pled guilty to the charge in Count Eight.  That's

5    why the plea was entered.

6        And what counsel is now asking for is, based upon the

7    evidence that was the basis for getting a plea and even

8    surviving the bar with regards to Count Eight, that you

9    punish the defendant further.  I would suggest that that's

10   not appropriate under the circumstances.  And requesting the

11   high end of the guideline -- and if your Honor were to

12   conclude that it is the guideline, that of 57 to 71, that

13   you stay with the 57, the low end the guideline.

14       Now, with regards to what we view as -- because, Judge,

15   even with regards to that also, what counsel hasn't

16   mentioned in one breath is the torture that everybody --

17   now, my client put himself there at the Wyatt for the past

18   three -- or almost three full years with his conduct.  He

19   did that.  He's taken responsibility for that fully.  But

20   what he had to endure during that three-year period of time,

21   at least in my 43 years, is beyond time tens anything that

22   I've ever seen prisoners experience.

23       Generally speaking, for a year, for a solid year,

24   having one hour out, going on a 23-and-1 schedule, is

25   tantamount to torture in some form certainly.  And living --

1          You know, and as difficult as it was as defense

2      attorneys must do, and I did, going to jails and prisons

3      still on a regular basis, and the mental and psychological

4      emotions and feelings that I had going in and out of the

5      jails was significant, and how I might be endangering others

6      when I'm doing that; but the fact of the matter is I got to

7      leave, and I got -- I didn't have to go through everything

8      else that went with it.  What did I experience?  Two percent

9      of what they experienced?  Maybe 1 percent?

10         And to suggest that the high end of the guideline, and

11     not even give consideration for that, to me does not speak

12     to fairness.

13         Now, with regards to the four-point enhancement.  Yes,

14     there are other circuits that permit for ammunition alone,

15     but not the First.  And there's good reason for it in the

16     case law that I provided to the Court.

17         Now, even the case law that counsel's talking about,

18     "readily available to facilitate..."  But let's think about

19     this.

20         Yes, defense -- the video is a sign of defense, but not

21     defense -- defense oftentimes can be from other drug dealers

22     and other robbers coming into the property.  It can be for

23     all.  But let's assume it's all because it's defense of --

24     he's doing -- he's doing drug dealing, which he pled to.

25         Now, everything is in the apartment where he's working

1  and where he's residing.  Now, who in their right mind,

2  quite frankly, would have a firearm that they're going to

3  use in the course of their commission of a felony drug

4  business and not have it on person or readily available?

5      This is found in insulation in the basement.  And you

6  go through one door, and then you go into another door; and

7  then you can go down into the basement, and, oh, by the way,

8  you can go into the insulation and pick up what's on top it.

9      And I'm sure that anybody who's breaking and entering

10  into property or anybody who's dangerous to the drug

11  business that's ongoing would be more than happy to wait for

12  all of that to happen so that Mr. Martinez can access a

13  firearm.

14      Now, there has to be some degree -- and that's why

15  we've provided the Court with the *Paneto* case, which is

16  First Circuit.  And they ruled against the defendant in that

17  particular case, as I'm sure this Court is aware.  They

18  ruled against him.  But the fact of the matter is is in that

19  case the firearm was inside of the apartment, readily

20  available, not down in the basement and not in the

21  insulation.

22      And there has to be some degree of intellectual honesty

23  with regards to attaching.  My client has pled to a felon in

24  possession charge, and he's taken responsibility for that.

25  But what he is not taking responsibility for is this

1    enhancement that does not apply and should not apply.

2    Because he darn well knows if people are coming in the door

3    where he needs to use a firearm, what good is it going to be

4    doing in the basement in the insulation?

5          Answer, None.

6          And there is no evidence in this case, there's no

7    evidence, that there was any other time that that firearm

8    was anywhere near Mr. Martinez.

9          There is no inference which can be drawn from any

10   relatable fact that the firearm was in position to be

11   facilitated in the commission of a felony.

12         And I would ask the Court for the benefit of the

13   argument that is being made by the defense.

14         Judge, my client, as is appropriately laid out in the

15   PSR, is someone who slid back into a drug habit, and he's

16   been racked by that for the good portion of his life.  Is he

17   a young man?  Yes.  But also he's had a horrific

18   happenstance in the use of drugs.  It's been terrible.  And

19   so he slid back into the business.

20         That's not a proclivity to commit crime per se.  I

21   would suggest that it's a sad reflection of much of our

22   society.  He's now had the benefit to be away from that junk

23   for the past three years.  But I'm asking for the Court to

24   not count the four-point enhancement because it isn't borne

25   out by the facts of this case.

1     And what I would ask the Court to do is then be on the

2  low end.  And on the low end, my client right now would be

3  eligible for a halfway house.  He'd be in it.  He'd be in it

4  if it was the low end of the guideline.

5     The one argument that the government -- excuse me, that

6  the defense has registered in the agreement, as the Court

7  can see, is this issue relative to this enhancement.  That's

8  what we're not agreeing to and have not agreed to.  And my

9  client has taken full responsibility.

10     If he is to get the four-point reduction off of the 23,

11  that's 19, and I'm going to ask the Court for time served

12  based upon everything else that has gone on over the past

13  three years.

14     He believes he's had COVID three times that he's been

15  incarcerated at the Wyatt.  The medical record only -- I was

16  not aware of the most recent one.  I was only aware of two

17  of them.  One of them was not reflected in the medical

18  records from the jail, but my client insists that it was.

19     And based upon all of those factors, Judge, we would

20  ask for -- I'm asking for time served deemed serve.  From a

21  practical perspective, even if the Court were to give the

22  four-point enhancement, we believe that he is eligible under

23  the First Step, which is retroactive to December of 2018.

24  And that would reduce his 51 by 17 months, which takes him

25  right back to the same mark where he is today.

```
1            It's been almost three years of haze, and we would ask
2     you for the benefit of that.
3            Thank you, your Honor.
4            THE COURT:  Thank you, Mr. Gleason.
5            MS. PORTER:  Your Honor, if I may, just to correct
6     for the record, I believe the case that counsel is referring
7     to you was United States v. Peneto, 661 F.3d 709 (1st Circ.
8     2011.)
9            The government cites to this case as well.  And just so
10    that the record is clear, that case does not deal with the
11    ammunition-alone question.  And also in that case the First
12    Circuit did affirm the enhancement being applied in the
13    defendant's case.
14           MR. GLEASON:  Judge, in response to that, if I may?
15    I believe I represented that to the Court, that they
16    found, the Circuit Court found, against --
17           THE COURT:  No, no, no, you did.
18           MR. GLEASON:  -- the defendant in that regard.
19           THE COURT:  Yes.
20    Mr. Martinez, if you wish, you can address the Court.
21    You are not required to, but you have the right to speak on
22    your behalf if you should choose to exercise it.
23           (Whereupon, the defendant and his counsel confer.)
24           THE DEFENDANT:  No, your Honor.
25           (Whereupon, the defendant and his counsel confer.)
```

1          THE DEFENDANT:  Your Honor, I'm sorry, sincerely

2     sorry.

3          THE COURT:  Excuse me?

4          THE DEFENDANT:  I'm sincerely sorry, your Honor.

5          THE COURT:  That's what you want to say?

6          THE DEFENDANT:  Yes, sir.  Yes, your Honor.

7          THE COURT:  Okay.  Let's put aside the allegation

8     of destruction of evidence because I just do not have a

9     sufficient record to actually make a judgment even by a

10    preponderance of the evidence in that regard.

11        I do, however, think that the firearm enhancement is

12    appropriate for the following reasons:  First, as

13    Ms. Porter stresses, the key word is "potential," not that

14    it was actually used to facilitate drug trafficking, but had

15    the potential to be used to do so.

16        Here a basement, as I understand the configuration of

17    the defendant's apartment and its location to the basement,

18    was readily accessible and was being regularly used by Mr.

19    Martinez, as evidenced by the fact that the hard drive and

20    security camera was in the basement, along with his wallet,

21    which suggests a fairly regular and familiar access to the

22    area where the firearms were otherwise stored.

23        I am intrigued by the idea that ammunition might be

24    enough, in and of itself, to warrant an enhancement.  I

25    don't think I really need to address that issue.  We'll wait

1    for the First Circuit in its wisdom to opine as to whether

2    it is going to follow other circuits or not in that regard.

3        So I think on the case as a whole, I am going to

4    essentially adopt the guideline ranges as calculated by the

5    Probation Office with a Criminal History Category of III,

6    and I'm going to impose a sentence of 66 months.

7        Mr. Martinez, if you will stand, please.

8        Can I ask Probation, I don't think the Bureau of

9    Prisons' Drug Treatment Program is realistic.  As I

10   understand it, he doesn't have that much more time.

11            PROBATION OFFICER:  No, your Honor, he won't be --

12   I just did the math.  It looks like he's been in custody

13   for -- on the 20th it will be like 46 months.  So I don't

14   think he will have enough time, but if anyone thinks

15   otherwise...

16       He could do -- not RDAP, but other substance abuse

17   disorder programs, yes.

18            THE COURT:  Let's suggest that.

19       Mr. Martinez, pursuant to the Sentencing Reform Act of

20   1984 and more particularly having considered the sentencing

21   factors enumerated in 18, United States Code,

22   Section 3553(a), it is the judgment of the Court that you be

23   committed to the custody of the Bureau of Prisons for a term

24   of 66 months.  This term will consist of 48 months to be

25   served on Counts Six and Seven, and a term of 66 months on

1    Count Eight, all to be served concurrently.

2         The Court will make a judicial recommendation that you

3    participate in psychological care for your mental health

4    needs.

5         The Court will also recommend that whatever drug

6    treatment could be available at the facility be made

7    available to you because I think you would benefit from it,

8    even though you will not be eligible given the balance

9    remaining on your sentence for the Bureau of Prisons'

10   program.

11        Upon release from custody you will be placed on

12   supervised release for a term of four years.  This will

13   consist of a term of three years on Counts Six and Seven and

14   a term of four years on Count Eight, these to run

15   concurrently.

16        Within 72 hours of release from the custody of the

17   Bureau of Prisons, you must report in person to the

18   Probation Office in the district to which you are released,

19   which will almost certainly be Massachusetts.

20        The Court does not impose a fine, as you clearly do not

21   have the financial ability at present to pay a fine.

22        Is there an order of forfeiture pending?

23             MS. PORTER:  No, your Honor.

24             THE COURT:  While on supervised release you will

25   comply with the following terms and conditions:

1        You will not commit any federal, state, or local crime.

2        You will not unlawfully possess a controlled substance.

3        You must refrain from any unlawful use of a controlled

4   substance.

5        You must submit to one drug test within 15 days of

6   release from imprisonment and at least two periodic drugs

7   tests thereafter, not to exceed 104 tests per year.

8        You are required by law to cooperate with the

9   collection of a DNA sample, again as directed by your

10  probation officer.

11       You will comply with the standard conditions adopted

12  but the court.  These are set out in United States

13  Sentencing Guidelines Section 5D1.3(c).  These will be set

14  forth in further detail in writing in the Judgment.

15       While on supervised release you will participate in a

16  substance abuse/use treatment program and follow the rules

17  of that program, again as determined in the discretion of

18  Probation Office.

19       You will submit to substance abuse testing, again

20  within the statutory 104-drug-tests-per-year condition that

21  I previously imposed.

22       You are prohibited from consuming alcoholic beverages.

23       You will participate in a mental health treatment

24  program as directed by the Probation Office.

25       You must participate in an Educational Service

1    Program -- again, this will be at the direction of the

2    Probation Office -- as well as a Vocational Services

3    Training Program, which I think you would benefit from.

4        You may be required to contribute to the cost of

5    evaluation, treatment, and monitoring based on your ability

6    to pay or the availability of a third-party payor.

7        It is further ordered that you pay to the United States

8    a special assessment of $300 which, by operation of law,

9    shall be due immediately.

10        Ms. Porter, I am trying to recall the waiver of appeal.

11    Does the waiver run to the enhancement issue?

12            MS. PORTER:  No.  The waiver did not include the

13    ability to appeal the enhancement.

14            THE COURT:  Then I think we should advise

15    Mr. Martinez of the right to appeal because it may very well

16    attach.

17            THE CLERK:  You have the right to file a Notice of

18    Appeal in this case.  If you wish to do so, you must do it

19    within 14 days in which I enter Judgment.  If you cannot

20    afford an attorney to do it, you may request me to do it and

21    I will file it in the Clerk's Office on your behalf.

22            THE COURT:  Mr. Martinez, good luck.

23        I think Mr. Gleason did a very admirable job sketching

24    the circumstance you found yourself in.

25        I know it's been a difficult three years.  I think it

1    has been for all of us.  Clearly I'm not suggesting on the

2    same magnitude that you have had to endure.  But the balance

3    of the sentence is not that long, so you have to prepare

4    yourself for a better life.  I know the Probation Office

5    will be there to help you secure that goal.

6         So good luck, and we'll otherwise be in recess.

7              THE DEFENDANT:  Thank you, your Honor.

8              MS. PORTER:  Thank you, your Honor.

9         (Proceedings adjourned.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T E

I, James P. Gibbons, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/James P. Gibbons          October 19, 2022
    James P. Gibbons


JAMES P. GIBBONS, CSR, RPR, RMR
Official Court Reporter
1 Courthouse Way, Suite 7205
Boston, Massachusetts 02210
jamesgibbonsrpr@gmail.com